UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

FEDIE R. REDD,

                Plaintiff,

-against-

NEW YORK STATE DIVISION OF PAROLE,

                Defendant.

-------------------------------------------------------------X

**REPORT & RECOMMENDATION
07 CV 120 (NGG) (LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff, Fedie R. Redd, brings this *pro se* action pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000(e), *et seq*. ("Title VII"), alleging that defendant New York State

Division of Parole ("DOP") discriminated against her based on her race (African-American),

color (Black), gender (Female) and religion (Protestant), and subjected her to unequal terms and

conditions of employment, retaliation, and harassment. Defendant moves for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The Honorable Nicholas G.

Garaufis referred defendant's motion to me for a Report and Recommendation pursuant to 28

U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's

motion for summary judgment should be granted in part and denied in part.

---

[1] Defendant provided plaintiff with the requisite notice under Local Civil Rule 56.2. Document 43.

# BACKGROUND

The following facts are undisputed unless otherwise noted.[2]

## I.  Factual History

Plaintiff began working as a parole officer ("PO") for the New York State Division of Parole on April 30, 1990. Def. 56.1 ¶ 1. She was stationed in the Queens I Area Office starting in 1993, id. ¶ 2, and in September of 2001, Senior Parole Office ("SPO") George Leifer was assigned as her supervisor. Leifer Dep. at 4-5; Pl. Dep. at 77.

Within the first several months of becoming plaintiff's supervisor, Leifer prepared twelve memoranda accusing plaintiff of insubordination, verbal abuse, harassment, and belligerency. See Complaint, Document 1-11 at 20-36; see also Leifer Dep. at 23. In one memorandum, Leifer wrote, "Redd's behavior is becoming increasing hostile and challenging. It is becoming almost impossible to have a conversation with this parole officer, without her yelling, screaming, and making bizarre accusations. During our conversation, PO Redd stated that she has determined that I have 'targeted her for a pattern of harassment.'" Document 1-11 at 21. Plaintiff responded with memoranda of her own, accusing Leifer of unprofessional behavior and hostility. Document 1-7 at 17; Document 1-11 at 35. On September 26, 2003, plaintiff was issued a Notice of Discipline for her insubordination toward Leifer. Def. 56.1 ¶ 13. The Notice of Discipline was ultimately withdrawn due to the unavailability of a key witness. Id.

---

[2] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendant has submitted statements of undisputed material facts, and plaintiff filed corresponding counter-statements under 56.1(b). The Court may not rely solely on the Rule 56.1 statements: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Giannullo, 322 F.3d at 143 n.5. Therefore, the Court relies only upon those facts in the parties' Rule 56.1 statements that are supported by admissible evidence and not controverted by the record.

### A. 2003 EEOC Charge No. 160-2004-00166

On October 22, 2003, plaintiff filed a charge of discrimination with the EEOC (Charge

No. 160-2004-00166) alleging that she had been discriminated against based on her race, sex,

color, creed and religion.[3] Def. 56.1 ¶ 9. Plaintiff accused Leifer of throwing a folder at her,

brandishing his gun, allowing her to visit a parolee known for selling guns, and directing her to

place an unsealed bag of urine in the urine room. Def. Ex. A. She also claimed that the September

26, 2003 Notice of Discipline was based on her color, and that she was passed over for

reassignment to Central Long Island ("CLI") in favor of a white female, Debbie Liehmann, and a

white male, Michael Polly. Id. On October 27, 2003, the EEOC issued a Right-to-Sue letter,

dismissing plaintiff's charge and informing her of her right to sue; however, plaintiff did not file a

lawsuit within 90 days as instructed by the Right-to-Sue letter. Def. 56.1 ¶¶ 10, 11.

### B. 2005 SDHR Charge No. 10108574; 2006 EEOC Charge No. 16G-2006-00444

On September 16, 2005, plaintiff was suspended from duty without pay pending a

disciplinary proceeding for refusing to input parolee case profiles as directed. Id. ¶ 35. According

to Area Supervisor Sarah Washington,

> [o]n September 14, 2005, PO Redd refused the direct order of SPO Crawford and
> myself that she input the Case Profiles for her parolees before leaving work unless
> I authorized overtime . . . Because plaintiff refused to do the inputting, I gave PO
> Redd a direct order to input the Case Profiles, informing her that I would be
> writing the incident up for her insubordination. PO Redd responded "What part of
> I ain't doing it that you don't understand."

Id. ¶ 29; Washington Aff. ¶ 11. Several days later, defendant issued an amended notice of

suspension charging plaintiff with failure to have her state issued shield and identification card on

---

[3] Plaintiff filed a similar complaint with the DOP's Office of Equal Employment Opportunity/Diversity Management
("EEO/DM") several days earlier, on October 17, 2003. On November 14, 2005, the EEO/DM issued a determination
finding "no probable cause" for plaintiff's charges. Def. 56.1 ¶ 14.

her person while on duty on September 16, 2005, and for refusing to turn these items over as directed. Def. 56.1 ¶ 35. Id.

These matters were referred to arbitration. On January 31, 2006, the arbitrator concluded that plaintiff had disobeyed direct orders and was guilty of insubordination, but that the DOP did not have probable cause to suspend plaintiff for failure to return her shield and identification card. Id. ¶ 38. The arbitrator determined that a two-week suspension without pay and a loss of two weeks of accruals was appropriate and ordered that plaintiff be reinstated. Id. Plaintiff's two-week suspension without pay lasted from September 19, 2005 until October 2, 2005; she was restored to payroll on October 3, 2005. Id. ¶ 48.

On November 1, 2005, plaintiff filed a charge of discrimination with the State Division of Human Rights ("SDHR") (Case No. 10108574), alleging that she was discriminated against because of her race, color, sex and opposition to discriminatory practices. Id. ¶ 40. Plaintiff claimed, *inter alia*,

> 5.      [A]ll of the above named individuals scrutinize my work and they are not doing this to my white or male Parole Officers. They have subjected me to numerous investigations when parolees lodged complaints against me. It should be noted that neither my white nor male co-workers have been subjected to as many investigations as I have been.
>
>         . . . .
>
> 7.      On April 19, 2005, June 16, 2005, and September 15, 2005, Ms. Washington has sexually harassed me by brushing up against my breast while I was sitting at the computer, and she rubbed my hand. Ms. Washington never apologized for touching me, and I backed away from her to refuse her advances.
>
> 8.      Since February 26, 2005, I have been on the list to be laterally transferred. I requested to be transferred [to the] Hempstead Area Office, and my name was on the Central Long Island list, and Suffolk County list. In September 2005, respondent denied my transfer claiming that I am number three on the list although I was number one on the list.

9.     On September 14, 2005, Ms. Washington refused to pay me overtime though she compensated my white and male co-workers for the overtime they worked.

. . . .

13.     Respondent's discipline of me is discriminatory in that they have disciplined me in a more stringent manner than they have white or male Parole Officers who have committed serious infractions. For instance, George Leifer, Woody Fisher, and Nathan Uretsky, Debbie Liehmann who are all white have committed serious infractions, yet respondent failed to implement any disciplinary actions against them.

Def. Ex. D. The SDHR dismissed plaintiff's charge, finding no probable cause to believe that defendant engaged in unlawful discrimination. Def. 56.1 ¶ 43. On November 7, 2006, the EEOC adopted the findings of the SDHR and issued a Right-to-Sue Letter (EEOC Charge No. 16G-2006-00444). Id. ¶ 46.

### C. 2006 SDHR Charge No. 10110827 and EEOC Charge 16G-2006-04726

Plaintiff returned to work on February 10, 2006, at which time she was involuntarily transferred from the Queens I Area Office to the Queens II Area Office and assigned to oversee the 114th Precinct. Id. ¶¶ 48, 53. These Queens area offices are located in the same building on the first and second floors. Id. ¶¶ 48-51. After being transferred, Bureau Chief Muriel Harvey and Senior Parole Officer Kathleen Rabbito instructed plaintiff not to go to the Queens I Area Office on the second floor. See Def. Ex. U.

On March 21, 2006, plaintiff filed a complaint with the SDHR (Case No. 10110827) claiming that defendant retaliated against her by, *inter alia*, failing to notify her of a job posting; transferring her to the Queens II Area Office, assigning her to the 114th Precinct instead of the 107th or 112th Precincts, and barring her from the second floor of the Queens I Area Office.[4] Def.

---

[4] Plaintiff also filed a union grievance challenging her reassignment to the 114th Precinct. Def. 56.1 ¶ 53. Her grievance was denied. Id.

Ex. Q. The SDHR dismissed plaintiff's complaint, and on November 7, 2006, the EEOC adopted

the SDHR's findings and issued a Right-to-Sue Letter (EEOC Charge No. 16G-2006-04726). Def.

56.1 ¶¶ 60, 63.

Plaintiff filed a related grievance on March 29, 2006, claiming that the restriction from the

second floor prevented her from accessing her union constituents in violation of the Public

Employees Federation ("PEF") union contract.[5] Def. 56.1 ¶ 56. On April 21, 2006, plaintiff's

grievance was denied but the restriction was lifted. Def. Ex. U. Regional Director James Dress

explained that the restriction was issued following allegations by Leifer that plaintiff made

unprofessional comments to or about him, and that the "instruction was given to enhance the

smooth functioning of the office . . . [and] was not designed to limit PEF's access to staff." Id.

### D. 2006 SDHR Charge No. 10112833 and EEOC Charge No. 16G-2006-03895

On April 6, 2006, Rabbito met with plaintiff to discuss new DOP procedures requiring

plaintiff to conduct weekly night curfew-checks. Def. 56.1 ¶ 65. According to Rabbito, plaintiff

screamed that she was not going to work nights or weekends. Rabbito Aff. ¶ 6. Rabbito admits

that she stood up from her chair and stated "get her out of my sight, get her out sight [sic], get her

out of my office, get her out of my office! I don't want to talk to her, I don't want to supervise

her." Def. Ex. CC at 771. However, plaintiff claims that Rabbito said, "get this bitch out of my

office . . . get this piece of shit out of my office . . . I am sick of her bullshit get her away [from]

me . . . She's a Son of a Bitch," and that she "felt threatened by [Rabbito's] actions when she

pushed her chair back, and postured as though she was going to fight me." Id. at 770. Thereafter,

plaintiff filed an internal grievance claiming that she no longer could be supervised by Rabbito

---

[5] Plaintiff served as a PEF shop steward from 2004 until 2007.

because of her unprofessional and threatening behavior. Id. at 769. Plaintiff's grievance was denied. Id. at 868.

On June 12, 2006, plaintiff filed a grievance stating that she has been issued a man's bulletproof vest. Def. 56.1 ¶ 70. A series of DOP emails reflect that plaintiff was issued a man's vest on two occasions and that on or about July 27, 2006, plaintiff received a proper vest. See Def. Ex. DD.

On July 20, 2006, plaintiff filed a charge with the SDHR (Case No. 10112833) alleging unlawful discrimination and retaliation based on her race, color, and sex. Def. Ex. Y. She claimed, *inter alia*, that Deputy Regional Director Anthony Tomaso was told to "come to Queens and get rid of me"; that Rabbito cursed and threatened her; and that defendant involuntarily transferred her to the "more dangerous" 114th Precinct, provided her with a man's bulletproof vest, passed her over for a transfer in favor of Olga Harris, a Native-American, and Darryl Samples, a man, and passed her over for assignment to the 106th Precinct in favor of PO Leon Flanagan.[6] Id. The SDHR dismissed the charge, and on August 26, 2008, the EEOC adopted the SDHR's findings and issued a Right-to-Sue Letter (EEOC Charge No. 16G-2006-03895). Def. 56.1 ¶¶ 87, 93.

On February 1, 2007, plaintiff was voluntarily reassigned to the Central Long Island Area Office, where she is presently employed. Def. 56.1 ¶ 3.

---

[6] On July 26 and 27, 2006, plaintiff filed internal grievances regarding many of the allegations in her SDHR charge. See Def. 56.1 ¶¶ 72, 75.

## II. Procedural History

Plaintiff commenced this action on January 4, 2007 alleging that defendant discriminated against her based on her race, color, gender and religion, and subjected her to unequal terms and conditions of employment, retaliation, and harassment in violation of her rights under Title VII. She writes,

> [t]here has been ongoing unlawful discriminatory practices against me, in my capacity as a NYS Division of Parole Officer. The more I have complained, and filed grievances, the more discrimination has been directed toward me. As a female parole officer I have been denied overtime, have been subjected to homosexual advances, suspended because I complained, transferred to a precinct 36 miles from my home, passed over blatantly on the transfer list with a white male [and] female, an Indian female, and Black male, called derogatory names, bullied, and vulgar language used against me by a white gay female. This occurred after I complained to NYS State Division of Human Rights in regards to being touched sexually by a Black female Area Supervisor. A white Jewish male Senior Parole Officer threw a case folder at me, and then showed me the butt of his gun and bladed his target, while in my office. I subsequently, taped him harassing me. The tape was given to the Affirmative action officer. She never investigated any of the charges and sweep [sic] it under the rug for one year. Than [sic] after filing a complaint with NYS Human Rights, a conclusion to the matter was received, which basically stated the charges were unfounded. This same supervisor wrote me up almost every date while I was under him including, 9/11/01 while the world trade center was burning down. When I returned from suspension he was allowed to create a false story which barred me from the second floor of my work place. I am number 1 on the transfer list to the Hempstead Area office. On 12/6/06 they placed the very same Area Supervisor who touched me inappropriately, and lied on me to have me suspended; in the Hempstead Area Office. I have on a continued basis, been denied equal terms and conditions of my employment. This is due to my race, creed, color, sex, and opposition to discrimination, and retaliation. [7]

Compl. Defendant answered the complaint on April 26, 2007. Thereafter, the parties conducted discovery.[8] Defendant now moves for summary judgment. Plaintiff opposes the motion.

---

[7] Attached to the instant Title VII complaint are the SDHR Verified Complaint, Verified Answer, and Determination and Order for Case No. 10108574; the EEOC Right-to-Sue letter for Case No. 16G-2006-00444; the Verified Answer, Rebuttal Answer and Determination and Order for Case No. 10110827; and the Verified Complaint, Verified Answer, and Rebuttal Answer for Case No. 10112833.

[8] In her opposition, plaintiff requests that the Court compel Washington to turn over her time sheets. Plaintiff's request is denied. Discovery closed over a year ago, and plaintiff fails to show good cause under Fed. R. Civ. P.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.

16(b)(4) to reopen discovery. See also Document 29 (previously denying plaintiff's request for a copy of Washington's time sheets filed "over a month after discovery had closed.").

9

1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagra, 315 F.3d at 175 (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, we read her papers "liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotations omitted).

## DISCUSSION

### I.    Statute of Limitations

To bring a timely complaint under Title VII, an aggrieved employee must (1) file a charge with the EEOC within 180 days of the alleged discriminatory act or file a charge with an equivalent state or city agency within 300 days of the alleged discriminatory act and (2) file a lawsuit in federal court within 90 days after receiving a Right-to-Sue letter. 42 U.S.C. § 2000e-5(e)-(e)(1). Here, plaintiff filed a charge with the EEOC on October 22, 2003 and received a Right-to-Sue letter on October 27, 2003. The Right-to-Sue letter stated, "Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost." Def. Ex. B (emphasis in original). Plaintiff did not file suit within 90 days. Therefore, her claims based on her October 22, 2003 EEOC charge should be dismissed as untimely.[9] Likewise, plaintiff's claims based on discrete acts of discrimination occurring more than 300 days before she filed her November 1, 2005 SDHR complaint (before January 5, 2005)

---

[9] Defendant argues that "plaintiff's religious discrimination claim, raised for the first time in her Title VII Complaint, is barred as unexhausted." Def. Memo at 30. The record reflects that plaintiff's 2003 EEOC charge alleges discrimination based on religion. See Def. Ex. A at 1692. Nonetheless, this claim should be dismissed as untimely because plaintiff did not file suit on this charge within the 90 day limitation period.

are time-barred and should be dismissed.[10] See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period.").

## A. Equitable Tolling

Plaintiff argues that her claims should be equitably tolled. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). "Equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising [her] rights." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 78 (2d Cir. 2003) (internal quotations and citations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" Id. at 80-81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).

Plaintiff argues that "complaints [were] made directly to superiors since September 2001-2006 in which no action was taken," and that defendant "swept" her complaint "under the rug" by not responding to her October 17, 2003 internal grievance for two years. Pl. 56.1 ¶ 15; Pl. Opp. at

---

[10] Unlike discrete acts, which occur on a particular day, a hostile work environment claim targets unlawful employment practices occurring over a series of days or even years. See Nat'l R.R. Passenger Corp., v. Morgan 536 U.S. 101, 115 (2002). As long as one "act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. Id. at 117. Here, plaintiff's claim that defendant subjected her to "ongoing harassment" includes at least one allegation of discrimination occurring during the limitations period. Therefore, the Court shall consider plaintiff's hostile work environment claim dating back to 2001.

4, 17. Although defendant admits that there was a "delay in DOP's issuing its final determination,"[11] Def. 56.1 ¶ 15, plaintiff fails to explain how this delay prevented her from filing suit within the 90 day period. See Vernon v. The Port Auth. of New York and New Jersey, 154 F.Supp.2d 844, 852 (S.D.N.Y. 2001) ("[t]here is no evidence, however, that [defendant] used the internal investigation to hinder [plaintiff] from filing."). Further, plaintiff's argument that defendant "swept her complaint under the rug" for two years while investigating her internal grievance does not excuse her own failure to file the instant lawsuit within 90 days as explicitly directed by the Right-to-Sue letter. As plaintiff fails to proffer any evidence that she acted with reasonable diligence to file the instant action in Court, or that circumstances were so extraordinary that she was prevented from doing so, plaintiff is not entitled to equitable tolling.

## B. Equitable Estoppel

"Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of [her] cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of [her] cause of action but the defendant's conduct caused [her] to delay in bringing [her] lawsuit." Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 49-50 (2d Cir. 1985). To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to her detriment. Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995).

Plaintiff claims that she did not file a timely complaint due to defendant misleading her, which she claims included assurances that she would be transferred, that Leifer would stop

---

[11] Defendant states that "although DOP's records showed that plaintiff had filed a complaint with the EEOC in October 2003, which was dismissed on October 27, 2003, the EEO/DM Office was not notified of such complaint's disposition until March 2005, which, along with plaintiff's 2003 disciplinary review, contributed to delay in DOP's issuing its final determination." Def. 56.1 ¶ 15.

harassing her, Pl. Opp. at 17-18, and that all of her issues "would be resolved." Pl. 56.1 ¶ 11. However, she fails to present any evidence from which a reasonable jury could conclude that defendant made a definite misrepresentation of fact regarding the 90-day limit to file suit once plaintiff received her Right-to-Sue letter. See Wayne v. Principi, No. 01 Civ. 941, 2004 WL 389009, at *7 (S.D.N.Y. March 3, 2004) (equitable estoppel inapplicable where there was no evidence of misconduct). Therefore, plaintiff is not entitled to equitable estoppel.

## II. Title VII – Disparate Treatment

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 56 (2006). A plaintiff bringing a Title VII action bears the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000). Employment discrimination claims are analyzed under the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she is qualified to perform the job or is performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on her membership in the protected class. See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

Defendant concedes that plaintiff has met the first and second prongs of her *prima facie* case. She is an African-American female who was qualified to perform her job. However, defendant argues that plaintiff cannot establish the third and fourth prongs of her *prima facie* case, that she suffered an adverse employment action and that the circumstances surrounding that adverse action give rise to an inference of discrimination.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be "materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotations omitted). Such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. To establish an inference of discrimination, a plaintiff can proffer direct evidence of discriminatory intent or with circumstantial evidence of such intent by showing that the employer treated the plaintiff less favorably than a similarly situated employee outside of her protected group. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 77 (2d Cir. 2001).

A plaintiff's burden to establish a *prima facie* case of discrimination is *de minimus*. See Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). If plaintiff succeeds in establishing a *prima facie* case, a presumption of discrimination arises and the burden shifts to defendant to present a legitimate, non-discriminatory reason for the adverse employment action. Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (citation and quotation marks

14

omitted). If defendant meets this burden and offers such a reason, then the burden shifts back to plaintiff to provide evidence that defendant's proffered reason was pretextual. Id., see also Reeves, 530 U.S. at 143 (plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination."). However, the Second Circuit has pointed out that "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). "In short, the question [at the pretext stage] becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); see also James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) (defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.").

Defendant argues that even if plaintiff has met her *prima facie* case, summary judgment should be granted because it has presented a legitimate, non-discriminatory reason for any adverse employment action taken against plaintiff and plaintiff has no evidence to demonstrate that defendant's proffered reason for the adverse action is a pretext for discrimination.

### A. Failure to Transfer and Reassign

Plaintiff claims that defendant discriminated against her by failing to transfer her to a Long Island Area Office. She maintains that despite being number one on the Reassignment/Transfer lists for the Hempstead, Central Long Island, and Suffolk Area Offices

from 2001-2007, Pl. 56.1 ¶ 24, that Debbie Liehmann, a white female, Michael Polly, a white male, Olga Harris, a Native American, and Darryl Samples, an African-American male, were all transferred to a Long Island Office before she was. She also claims that defendant violated its own caseload policy by assigning PO Leon Flanagan to the 106th Precinct in June of 2006 instead of her. Pl. Opp. at 5-6.

A denial of a transfer may constitute an adverse employment action when "a plaintiff adduces sufficient evidence to permit a reasonable factfinder to conclude that the sought for position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other objective indicator of desirability." Beyer v. County of Nassau, 524 F.3d 160, 165 (2d Cir. 2008). A plaintiff must proffer objective indicia that the transfer denial created a materially significant disadvantage in her current working conditions. Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004).

Plaintiff fails to demonstrate that a transfer to a Long Island Area Office or a reassignment to the 106th Precinct would have been materially more advantageous than her current position. According to Keith Wilson, DOP's Director of Personnel, "PO positions that are filled through the Reassignment/Transfer Lists at each Area Office throughout the state all have the same salary grade, benefits, job description and basic duties." Wilson Aff. ¶ 9. Plaintiff even admits that her grade level, job duties, and opportunities for advancement remained the same after she was transferred to Central Long Island. Pl. Dep. at 222-23, 231. Although plaintiff states that she wanted to be transferred to Long Island to be closer to her home and her children, Pl. Dep. at 91-92, "subjective, personal disappointments" are insufficient to demonstrate an adverse employment

16

action. See Williams, 368 F.3d 123, 128 (2d Cir. 2004) (denial of transfer did not constitute adverse employment action where plaintiff desired to return home).

Even if the failure to transfer plaintiff was an adverse employment action, defendant presents a legitimate, non-discriminatory reason for not transferring plaintiff to a Long Island Area Office or reassigning her to the 106th Precinct. According to defendant, reassignments and transfers are based on seniority, Wilson Aff. ¶ 6; however, "Parole Officers may not assert their State seniority . . . until they have been in a bureau or area office for one year or more." Def. Ex. FF. As of April 18, 2005, plaintiff was not number one on any transfer list; the record reflects that she was number two for Central Long Island, number three for Nassau, and number five for Suffolk. Def. Ex. UU. Likewise, plaintiff was ineligible for reassignment to the 106th Precinct in June of 2006 because at that time, she had only been in the Queens II Area Office for approximately four months.

Defendant states that plaintiff was "arguably" number one on the April 18, 2005 Central Long Island Reassignment/Transfer list since the first person on the list was serving in a Special Assignment in CLI. Wilson Aff. ¶ 18; Compl. Document 1-7 at 24. However, even assuming, *ad arguendo*, that plaintiff was number one on the transfer list, she does not present evidence that there were openings in the Long Island Area Offices for her to transfer into. Wilson Aff. ¶¶ 15, 23.

Plaintiff also fails to present evidence that employees of lesser seniority were transferred before her. The record reflects that PO Leon Flanagan had more seniority than plaintiff. Def. Ex. Z. Moreover, contrary to plaintiff's allegations, Deborah Liehmann, Michael Polly, Olga Harris,

and Darryl Samples did not jump ahead of plaintiff on the transfer lists because these employees were selected for Special Assignments, which are *not* based on seniority but are filled through an application process. Wilson Aff. ¶¶ 6, 23. Although plaintiff submits statistics purportedly showing that more white men are promoted and transferred outside of New York City than black women, and argues that "[s]pecialized caseloads are a discriminatory utilization tool to keep most Black Officers out of mainly White towns," see Pl. Opp. at 13, 19-20; see also Pl. Ex. F, these statistics and the conclusions plaintiff seeks to draw from them are insufficient to establish a disparate treatment claim. "[A]n individual plaintiff must prove that he or she *in particular* has been discriminated against." Baron v. New York City Dept. of Educ., No. 06-CV-2816, 2009 WL 1938975, at *6 (E.D.N.Y. July 7, 2009) (emphasis in original). Here, plaintiff fails to present any evidence from which a reasonable jury could conclude that defendant discriminated against her by failing to transfer or reassign her to a Long Island Area Office at an earlier date. Therefore, defendant's motion for summary judgment should be granted, and plaintiff's claims regarding transfer and reassignment should be dismissed.[12]

### B. Discriminatory Discipline

Plaintiff alleges that her supervisors scrutinized her work more closely and disciplined her more rigorously than white or male POs. Pl. Opp. at 7; see also Def. Ex. D at 636. She claims that "George Leifer, Woody Fisher, and Nathan Uretsky, Debbie Liehmann who are all white have committed serious infractions, yet [defendant] failed to implement any disciplinary actions against them." Def. Ex. D at 637.

---

[12] Plaintiff also claims that she lost her position on the transfer lists "since she had to reapply." Pl. Opp. at 9. The record reflects that as of May 22, 2006, plaintiff was "No. 1, for CLI, No. 2 for Nassau, and No. 1 for the Suffolk Offices." Wilson Aff. ¶¶ 15, 20. Moreover, defendant's requirement that plaintiff "reapply" for the Reassignment/Transfer lists fails to raise an inference of discrimination because *all* POs were required to reapply for the Reassignment/Transfer lists by April 28, 2006, as DOP was issuing new lists for the new fiscal year. Id. ¶ 19.

Despite plaintiff's allegations, not all on the job discipline constitutes an adverse employment action under Title VII. Reprimands, excessive scrutiny or disciplinary charges cannot form the basis for a Title VII claim absent some materially adverse change in the terms and conditions of employment. Dauer v. Verizon Commc'ns Inc., 613 F.Supp.2d 446, 461 (S.D.N.Y. 2009) (citations omitted); Hills v. The City of New York, No. 03 Civ. 4265, 2005 WL 591130, at *4 (S.D.N.Y. March 15, 2005) (dismissed disciplinary charge was not an adverse action); Williams v. NYC Dept. of Sanitation, No. 00 Civ. 7371, 2001 WL 1154627, at *16 n. 25 (S.D.N.Y. Sept. 28, 2001) (collecting cases). Here, *only* plaintiff's two-week suspension without pay constitutes an adverse employment action under Title VII. See Satterfield v. United Parcel Serv., Inc., No. 00 Civ. 7190, 2003 WL 22251314, at *10 (S.D.N.Y. Sept. 30, 2003) ("[a]s for [plaintiff's] one-day suspension, this action arguably does fall within the Second Circuit's definition of 'materially adverse' action since plaintiff presumably was forced to forego one day's worth of wages"); see also Lovejoy-Wilson v. NOC Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) (suspension without pay for one week, even if plaintiff was later reimbursed, constituted an adverse action).

However, plaintiff fails to establish an inference of discrimination because there is no evidence that she was treated less favorably than similarly situated employees outside her protected group. See Hayes v. Kerik, 414 F.Supp.2d 193, 204 (E.D.N.Y. 2006) ("plaintiff must offer sufficient evidence from which a jury could reasonably conclude that there was indeed disparate treatment of similarly situated employees."). To be similarly situated, the individuals with whom the plaintiff attempts to compare herself with "must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997); see also

19

Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000) (what constitutes "all material respects" varies from case to case and must be judged on "(1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness") (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir. 1999)).

Here, the Court will assume that Leifer, Fisher, Uretsky and Liehmann were similarly situated to plaintiff; however, plaintiff fails to demonstrate that she was treated less favorably than they were. All of these individuals, except for Liehmann, *were* disciplined for their misconduct.[13] Even assuming that plaintiff has established that she was treated less favorably, defendant presents a legitimate, non-discriminatory reason for suspending plaintiff - her insubordination. The record reflects that plaintiff refused direct orders to input case profiles as instructed by her supervisors. Washington Aff. ¶ 11. Additionally, the arbitrator concluded that plaintiff violated Articles 1 and 3 of the Employees Manual which supports defendant's argument that plaintiff was suspended for a legitimate, non-discriminatory reason: insubordination. See James v. Conn. Dep't of Corr., 3:05-cv-1787, 2009 WL 279032, at *5 (D. Conn. Jan 14, 2009) (the decision of the arbitrator provides further evidence in support of the presence of a legitimate, non-discriminatory reason for the adverse employment action and is accorded significant weight) (citing Collins v. New York City Transit Auth., 305 F.3d 113, 115 (2d Cir. 2002)). Although plaintiff denies that she was insubordinate, she fails to demonstrate that defendant's proffered reason for her suspension is pretext for discrimination. Therefore, defendant's motion for summary judgment

---

[13] Leifer received counseling for using profanity; Fisher was suspended for sexual harassment; and Uretsky was suspended for misconduct and incompetence. See Def. Ex. E at 641; see also Document 1-11 at 91, 100. The record does not reveal whether Liehmann was disciplined for cursing at a supervisor. See Def. Ex. D at 637 (plaintiff alleges that Liehmann cursed out her Area Supervisor).

should be granted, and plaintiff's claim that defendant discriminated against her by disciplining her should be dismissed.

### C. Overtime

Plaintiff alleges that Washington discriminated against her by refusing to pay her overtime on September 14, 2005. See Def. Ex. D; see also Document 1-11 at 7. While a denial of overtime is arguably an adverse action under Title VII, see Austin v. Ford Models, Inc., No. 95 CIV. 3731, 2000 WL 1752966, at *11 (S.D.N.Y. Nov. 29, 2000), there is no evidence that plaintiff actually worked overtime on September 14, 2005. In the arbitrator's Opinion and Award, the arbitrator explained that Redd refused to work overtime on September 14, 2005 because Washington stated that she would not be paid. Def. Ex. J; see also Def. Ex. E (defendant states that plaintiff "refused to complete her assignment and left her work area before the end of her day."). Therefore, defendant's motion for summary judgment should be granted and plaintiff's claim that defendant failed to pay her overtime on September 14, 2005 should be dismissed.

### D. Failure to Provide a Bulletproof Vest

Plaintiff alleges that defendant discriminated against her by requiring her to wear a man's bulletproof vest. She states, "I have been fitted for a new female vest five (5) times and have yet to receive one and feel that my life is in danger because my current vest doesn't fit." Def. Ex. Y. Courts in this Circuit have held that "where a refusal to provide equipment significantly interferes with or precludes job performance, or creates "unreasonably dangerous" conditions, such conduct can constitute an adverse employment action." Dauer, 613 F.Supp.2d at 456.; see also Crivera v. The City of New York, No. 03 CV 447, 2004 WL 339650 (E.D.N.Y. Feb. 23, 2004) (plaintiff's allegation that she received a bulletproof vest which did not fit and too little ammunition was

sufficient to survive defendants' motion to dismiss). Therefore, the Court will assume that defendant's failure to provide plaintiff with a vest that fits her constitutes an adverse action.

However, defendant presents a legitimate, non-discriminatory reason for the adverse action; it states that "plaintiff was issued a male vest accidentally." Def. Memo at 41. A series of emails reflect that plaintiff received a man's vest on two separate occasions, and that once these errors were brought to defendant's attention, immediate steps were taken to resolve the matter. See Def. Ex. DD. Although the source of the errors is not clear from the record, plaintiff provides no evidence that defendant intentionally issued her a man's vest because of discrimination. Therefore, defendant's motion for summary judgment should be granted and plaintiff's claim that defendant discriminated against her by failing to provide her with a proper bulletproof vest should be dismissed.

### III.     Hostile Work Environment

Plaintiff claims that defendant subjected her to a hostile work environment. To establish a hostile work environment, plaintiff must show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000), and that the conduct occurred because of her membership in a protected class. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). Plaintiff "must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). However, "Title VII does not prohibit all verbal or physical harassment in the workplace." Oncale v. Sundowner Offshore

Svcs., Inc., 523 U.S. 75, 80 (1998). The Court looks at the totality of the circumstances and considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see also Fitzgerald v. Henderson, 251 F.3d 345, 360 (2d Cir. 2001) (the court should not view the record in a piecemeal fashion); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000).

Here, plaintiff alleges that (1) Leifer threw a case folder at her, brandished his gun, allowed her to visit a parolee known for selling guns, directed her to place an unsealed bag of urine in the urine room, and issued counseling memoranda to her; (2) Tomaso stated that he was told to "get rid of her"; (3) Rabbito yelled "get this bitch out of my office"; and (4) Harvey and Rabbito barred her from the second floor. Considering the totality of the circumstances, these actions, which reportedly occurred over a period of about five years, were not sufficiently severe or pervasive to alter plaintiff's working conditions. Moreover, with the exception of Rabbito's use of the curse word "bitch," plaintiff does not allege that the conduct occurred because of her membership in a protected class.

The record reflects that plaintiff had a strong personality conflict with Leifer. See Pl. Dep. at 83 (plaintiff testified that Mr. Leifer was one of the most terrible supervisors). Although the Court does not condone the acts plaintiff attributes to Leifer, her allegations against him do not establish a hostile work environment claim under Title VII. See Farrar v. Town of Stratford, 537 F.Supp.2d 332, 352 (D. Conn. 2008) (personality conflicts are beyond the scope of Title VII). Additionally, plaintiff's brief restriction from the Queens I Area Office on the second floor and Tomaso and Rabbito's alleged comments, although offensive and unprofessional, do not rise to

23

the level of severe or pervasive discriminatory conduct. See Cruz, 202 F.3d at 570 (isolated instances of harassment do not rise to the level of severe or pervasive); Kodengada v. IBM, 88 F.Supp.2d 236, 243 (S.D.N.Y. 2000) ("[o]ffensive comments, such as using profanity to refer to a co-worker, [do] not rise to the level required to demonstrate a discriminatory hostile work environment.").

However, plaintiff's allegation that Washington brushed up against her breasts on three occasions over a five-month period is sufficient to survive defendant's motion for summary judgment. In her deposition, plaintiff testified that on April 19, 2005, Washington brushed up against her breasts causing her to spill water; that on June 16, 2005, while plaintiff was speaking with another parole officer, Washington "touched my breasts and rubbed up against it"; and that on September 15, 2005, Washington "reached over and touched and brushed up against my breast." Pl. Dep. at 142-43. Plaintiff also testified that she "reached out to Mr. Burgos" but that "nothing was done." Id. at 145.

Defendant argues that Washington's allegations, which it asserts are unsubstantiated, fall "well below the threshold for hostile work environment claims." Def. Memo at 33. In support of its argument, defendant cites Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998), in which the Second Circuit held that a comment regarding plaintiff's posterior and a deliberate touching of plaintiff's breast were insufficient to demonstrate a hostile work environment.[14] Id. at 768. Nonetheless, more recently, the Circuit stated in Aulicino v. New York City Dep't of

---

[14] Defendant also cites to Lewis v. N. Gen. Hosp., 502 F.Supp.2d 390, 403 (S.D.N.Y. 2007), in which the Court held that a male employee's claim that his female supervisor brushed up against him on four occasions, one of which was accidental, was not severe or pervasive contact. In Lewis, the Court held that the alleged sexual harassment was neither objectively nor subjectively severe, and that defendant's conduct did not unreasonably interfere with plaintiff's work performance. In the instant case, however, a reasonable jury could conclude that plaintiff has alleged enough to establish a hostile work environment.

24

Homeless Servs., 580 F.3d 73 (2d Cir. 2009) that Quinn ought not to be treated "as providing a precise standard for the number of hostile incidents over a particular time span so as to give rise to a viable hostile work environment claim." Aulicino, 580 F.3d at 84.

Here, a reasonable jury could conclude that Washington's alleged conduct was sufficiently severe and pervasive to create a hostile work environment. Plaintiff alleges that Washington, her supervisor, touched her breasts on three separate occasions over a five-month period. See Torres v. Pisano, 116 F.3d 625, 631 n. 4 (2d Cir. 1997) (noting that "even a single episode of harassment, if severe enough, can establish a hostile work environment"); see also McArdle v. Arms Acres, Inc., No. 03 Civ. 05721, 2009 WL 755287, at *15 (S.D.N.Y. Mar. 23, 2009) (citing cases). Plaintiff states that these incidents made her feel "uncomfortable" to the point where she "avoided Ms. Washington at all costs," but that Washington continued to call her into her office. Pl. Dep. at 141, 44-45. Plaintiff also states that she was reluctant to complain about Washington's actions for fear of being labeled as someone who cannot work with others. Id.

Although Washington denies ever touching plaintiff in any inappropriate manner, Def. Ex. E at 641; Washington Dep. at 6, the Court must consider the record in the light most favorable to the plaintiff. See Aulicino, 580 F.3d at 83. Plaintiff has testified that Washington, her supervisor, touched her breasts on three occasions over a five-month period, and that this conduct altered the conditions of her employment. Plaintiff raises a genuine issue of material fact regarding her hostile work environment claim against Washington. Therefore, defendant's motion for summary judgment on this claim should be denied.

## IV.   Retaliation

Plaintiff alleges that defendant retaliated against her for filing internal grievances and charges of discrimination with the SDHR and EEOC. She claims that defendant failed to notify her of a job posting, barred her from the second floor of the office, suspended her, and assigned her to the "more dangerous" 114th Precinct.

To establish a *prima facie* case of retaliation, plaintiff must show that (1) she participated in a protected activity known to the defendant; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 123 (2d Cir. 2008); Kessler v. Westchester County Dep't Social Servs., 461 F.3d 199, 205 (2d Cir. 2006). Retaliation claims are evaluated under the McDonnell Douglas burden-shifting framework. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (citing Quinn, 159 F.3d at 768). If plaintiff succeeds in establishing a *prima facie* case, a presumption of discrimination arises and the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse employment action. Jute, 420 F.3d at 173. If the defendant offers such a reason, the presumption of discrimination created by the *prima facie* case drops out, and the defendant will be entitled to summary judgment unless plaintiff can show that the proffered reason was pretext and that "retaliation was a substantial reason for the adverse employment action." Id.

Here, plaintiff engaged in protected activities by filing internal grievances and charges with the SDHR and EEOC. See 42 U.S.C. § 2000e-3(a) (Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing."). However, plaintiff fails to demonstrate that the alleged retaliatory actions taken against her were sufficiently adverse under Title VII. See White, 548 U.S. at 68 (plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination) (internal quotations omitted); Billings v. Town of Grafton, 515 F.3d 39, 54 (2d Cir. 2008) ("petty slights or minor annoyances that often take place at work and that all employees experience" fall outside the scope of the discrimination laws) (quoting White, 548 U.S. at 68).

### A. Failure to Notify Plaintiff of Job Posting

Plaintiff alleges that defendant failed to notify her of a job posting. She claims,

> [o]n February 9, 2006, a posting was made available for a position in the Special Offenders Unit in Central Long Island, where I am number one on the list. I was neither informed of the posting nor was the posting made available in my workplace . . . The expiration date for the posting was February 25, 2006. Computers were not made available in my facility so that I could view these postings until March 6, 2006.

Def. Ex. Q. However, plaintiff's assertion that she was "neither informed of the posting nor was the posting made available" is not supported by the record. According to Rabbito, job postings for Special Assignments were placed on a bulletin board in the Queens II Area Office above the fax machine and electronically transmitted to all POs. Rabbito Aff. ¶ 20. Even if defendant had failed to post a job assignment on this single occasion, there is nothing to suggest that such an action was aimed at plaintiff. There is no record evidence that employees were personally notified of vacancies. See Gelin v. Geithner, No. 06-CV-10176, 2009 WL 804144, at *12 n. 12 (S.D.N.Y. March 26, 2009) ("failure to personally notify employees of vacancies would affect all

27

employees, regardless of race or national origin."). Therefore, defendant's motion for summary judgment should be granted and plaintiff's claim that defendant retaliated against her by failing to notify her of a job posting in February 2006 should be dismissed.

### B. Barred from Second Floor

Plaintiff alleges that defendant barred her from the second floor of the Queens I Area Office in retaliation for filing a charge of discrimination with the SDHR. She claims that this restriction hindered her ability as Shop Steward to meet with her constituents. While it is undisputed that plaintiff was barred from the second floor, this restriction is not sufficiently adverse to state a claim for retaliation. Plaintiff did not work on the second floor. Moreover, there was already a PEF representative working on the second floor, and plaintiff could have met with her PEF constituents on another floor. There is no evidence that this restriction would have dissuaded a reasonable worker from making or supporting a charge of discrimination. The restriction lasted less than a month, and the record reflects that plaintiff filed both an internal grievance and a charge with the EEOC following this alleged adverse action. See Babcock v. New York State Office of Mental Health, No. 04 Civ. 2261, 2009 WL 1598796, at *21 (S.D.N.Y. June 8, 2009) (interference with plaintiff's ability to represent union members in his capacity as a Sector Steward was insufficient to withstand defendants' motion for summary judgment).

Moreover, defendant presents a legitimate, non-discriminatory reason for the restriction. According to James Dress, plaintiff's restriction from the second floor was based on an allegation by Leifer that plaintiff made unprofessional comments to or about him, along with plaintiff's acknowledgement of "ongoing disputes and claims of unprofessional behavior by both [plaintiff] against Mr. Leifer and by Mr. Leifer against [plaintiff] over the past year or longer." Def. Ex. U.

Defendant restricted plaintiff from the second floor "to enhance the smooth functioning of the office" and "to avoid easily avoidable office squabbles among staff." Id. Although there may have been better ways to handle this situation, plaintiff presents no evidence that defendant barred her from the Queens I Area Office on the second floor of the building in retaliation for her filing a charge of discrimination. Therefore, defendant's motion for summary judgment should be granted, and plaintiff's retaliation claim should be dismissed.

### C. Suspension

Plaintiff alleges that she was suspended in retaliation for complaining about Washington's sexual harassment. Pl. Opp. at 2. While it is undisputed that plaintiff was suspended without pay, defendant argues that plaintiff fails "to present any evidence that she ever filed any sexual harassment complaints until her first SDHR Complaint on November 1, 2005" and "cannot demonstrate that there was a causal connection between her October 2003 EEOC Complaint . . . and her September 2005 suspension nearly two years later." Def. Memo at 42. However, since plaintiff testified in her deposition that she complained to Burgos about Washington's inappropriate conduct, Pl. Dep. at 144-45, the Court will assume, *ad arguendo*, that plaintiff has established her *prima facie* case of retaliation regarding her complaints about Washington.

Nonetheless, defendant presents a legitimate, non-discriminatory reason for plaintiff's suspension - her insubordination on September 14, 2005. See supra. As plaintiff presents no evidence that defendant's reason is pretext and that retaliation was a substantial reason for her suspension, defendant's motion for summary judgment on plaintiff's retaliation claim regarding her suspension should be granted.

29

### D. Involuntary Reassignment to Queens II Area Office and the 114th Precinct

Plaintiff alleges that defendant transferred her to the Queens II Area Office and assigned her the "more dangerous" 114th Precinct in retaliation for filing charges with the SDHR. See Def. Ex. Q (claiming that the 114th Precinct was the "worst precinct in all of Queens" and "the location where two other Parole Officers have had their lives threatened"); see also Def. Ex. Y. The Supreme Court in White

> ruled that the anti-retaliation provision [of Title VII], unlike [Title VII's] substantive provision, is *not* limited to discriminatory actions that affect the terms and conditions of employment. Rather, to prevail on a claim for retaliation under Title VII, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 207-08 (2d Cir. 2006) (citing White, 548 U.S. at 62-67). In this Circuit, a transfer to a more dangerous work environment could constitute a materially adverse employment action. See Patrolmen's Benevolent Ass'n of the City of New York v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002) ("A lateral transfer . . . may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way.").

Here, plaintiff fails to present sufficient evidence that her transfer to the Queens II Area Office would dissuade a reasonable worker from making or supporting a charge of discrimination. Plaintiff admits that "Queens 2 [II] was in the same building," as the Queens I Area Office, Pl. Dep. at 185, and according to defendant, plaintiff's overall duties, job title, pay grade, and benefits remained the same. Burgos Aff. ¶ 14. Likewise, plaintiff's conclusion that defendant retaliated against her by assigning her to the "more dangerous" 114th Precinct is insufficient to

withstand defendant's motion for summary judgment because she proffers no evidence that the 114th Precinct was in fact "more dangerous." Moreover, defendant maintains that because all POs are required to monitor parolees, some of whom have committed violent crimes, the 114th Precinct was not necessarily more dangerous than any other precinct in the bureau. Rabbito Aff. ¶ 16; Burgos Aff. ¶ 15.

Even assuming that plaintiff has met her *prima facie* case, defendant proffers a legitimate, non-discriminatory reason for transferring and reassigning plaintiff. According to Tomaso, "plaintiff was transferred because she was needed at the Queens II bureau and the 114th Precinct due to a shortage of POs." Def. Memo at 17 (citing Def. Ex. BB). Further, the DOP's Reassignment/Transfer Policy explicitly provides that "the Division is not precluded from fulfilling its responsibilities with regard to: [i]nvoluntary reassignments/transfers as a result of budget reductions and/or overstaffing at a particular location." Def. Ex. UU at 701. As plaintiff presents no evidence that defendant's explanation is pretext or that her transfer and reassignment was in retaliation for filing charges with the SDHR, defendant's motion for summary judgment should be granted, and plaintiff's retaliation claim should be dismissed.

## CONCLUSION

Accordingly, it is respectfully recommended that defendant's motion for summary judgment should be granted in part and denied in part. Plaintiff's disparate treatment and retaliation claims should be dismissed, and plaintiff's hostile work environment claim based solely on plaintiff's allegations against Washington should proceed.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/Signed by Judge Lois Bloom/
LOIS BLOOM
United States Magistrate Judge

Dated: March 2, 2010
Brooklyn, New York